798 So.2d 126 (2000)
Joyce T. SAMUEL, Tiffany Samuel, and Bridgette Samuel
v.
BATON ROUGE GENERAL MEDICAL CENTER, Terry R. Jones, M.D., John D. Frusha, M.D., and Vascular Surgery Associates of Baton Rouge, Inc.
No. 99 CA 1148.
Court of Appeal of Louisiana, First Circuit.
October 2, 2000.
*127 Benjamin P. Mouton, Baton Rouge, for Plaintiffs-Appellees/Appellants Joyce T. Samuel, Tiffany Samuel, and Bridgette Samuel.
*128 James P. Doré, Baton Rouge, for Defendants -Appellants/Appellees Terry R. Jones, M.D. and Vascular Surgery Associates of Baton Rouge, Inc.
W. Luther "Bill" Wilson, Baton Rouge, for Defendants-Appellants/Appellees The Louisiana Patients' Compensation Fund and Patients' Compensation Fund Oversight Board.
Before: PARRO, GUIDRY, and GANUCHEAU, JJ.[1]
PARRO, Judge.
The plaintiffs challenge the trial court's damage awards in this medical malpractice case. For the following reasons, we affirm the awards and dismiss defendants' appeal.

FACTUAL AND PROCEDURAL BACKGROUND
This malpractice litigation was bifurcated. The issue of liability was tried first, and the trial court determined that Terry R. Jones, M.D., a vascular surgeon, was fifty percent at fault in the wrongful death of Alfred Samuel. The liability determination was appealed to this court, and the trial court's judgment was affirmed on February 18, 2000. Samuel v. Baton Rouge Gen. Medical Ctr., 98-1669 (La. App. 1st Cir.2/18/00), 757 So.2d 43, writs denied, 00-1314, 00-1329 (La.6/23/00), 765 So.2d 1044, 1046.[2]
In a judgment rendered on September 23, 1998, and signed on November 2, 1998, the trial court awarded the following damages: (1) Joyce T. Samuel was awarded $150,000 for the wrongful death of her husband; (2) Joyce T. Samuel was awarded $5,000 in general damages on her Louisiana Civil Code article 2315.6 claim for "bystander" damages; (3) Tiffany Samuel was awarded $75,000 in general damages for the wrongful death of her father; (4) Bridgette Samuel was awarded $75,000 in general damages for the wrongful death of her father; and (5) Joyce T. Samuel was awarded $26,911 in special damages for her economic loss claim. The plaintiffs' claim for damages for the pre-death suffering of Alfred Samuel (the survival action) was denied. All damages were to be reduced in accordance with the court's assessment of fifty percent fault to the deceased.
Pursuant to a motion for new trial by the plaintiffs, a new trial was granted in part, and a new judgment was rendered awarding Joyce T. Samuel additional special damages in the amount of $6,204.48 for funeral expenses and additional general damages on her Article 2315.6 claim, increasing the award to $15,000.00. In a separate judgment, the court also set costs in connection with the plaintiffs' rule to tax costs.
In their appellate brief in this appeal, the original defendants re-urged issues of liability that were disposed of in the previous appeal. These defendants, however, subsequently filed a joint motion with plaintiffs, the Louisiana Patients' Compensation Fund (the Fund), and the Patients' Compensation Fund Oversight Board (the Board), requesting the dismissal of defendants' appeal and the substitution of the Fund and the Board as defendants in the plaintiffs' appeal.
Plaintiffs appeal the damage awards. They contend that the failure of the trial court to award damages for Mr. Samuel's pre-death suffering was error. They also *129 aver that the special damages award and the awards for expert fees were too low. As to all three issues raised by the plaintiffs in this appeal, the defendants assert that there was no error by the trial court.

JOINT MOTION FOR PARTIAL DISMISSAL AND SUBSTITUTION
On July 27, 2000, plaintiffs, original defendants, the Fund, and the Board filed a joint motion requesting that the original defendants, Terry R. Jones, M.D. and Vascular Surgery Associates of Baton Rouge, Inc., be dismissed from the suit as having paid and satisfied in full the judgment against them in favor of plaintiffs, and requesting that the Fund and the Board be substituted as defendants from whom plaintiffs would have the right to collect any and all additional amounts due. This court referred the motion to the merits on July 31, 2000. Because the issues of liability have been previously resolved by a final judgment, and finding that Terry R. Jones, M.D., and Vascular Surgery Associates of Baton Rouge, Inc., have satisfied the judgment against them in full, we dismiss those parties from the suit and substitute the Fund and the Board as defendants. The joint motion to dismiss the appeal of Dr. Jones and Vascular Surgery Associates of Baton Rouge, Inc., is granted, reserving to them any rights they may have to proceed against the Fund and the Board for reimbursement of any and all costs they have paid to the plaintiffs in satisfaction of all judgments.

DAMAGES

Survival Action
In a survival action, certain beneficiaries of the deceased have the right to recover the damages for injuries that the deceased suffered and would have been entitled to recover from the tortfeasor, had the deceased lived. LSA-C.C. art. 2315.1; McNeely v. Ford Motor Co., Inc., 98-2139 (La.App. 1st Cir.12/28/99), 763 So.2d 659, 666, writ denied, 00-0780 (La.4/28/00), 760 So.2d 1182. A trial court may award damages for pain and suffering in a survival action where there is the smallest amount of evidence of pain, however brief, on the part of the deceased, based on his actions or otherwise; factors to be considered in assessing quantum for pain and suffering are the severity and the duration thereof. Gibson v. State, through Dep't of Transp. & Dev., 95-1418 (La.App. 1st Cir.4/4/96), 674 So.2d 996, 1005-06, writs denied, 96-1862, 96-1895, 96-1902 (La.10/25/96), 681 So.2d 373 and 374. Much discretion is left to the judge or jury in the assessment of general damages. LSA-C.C. art. 2324.1; Metrejean ex rel. Metrejean v. Prudential Ins. Co., 98-2170 (La.App. 1st Cir.11/5/99), 761 So.2d 1, 9. In reviewing an award of general damages, the court of appeal must determine whether the trier of fact has abused its discretion in making the award. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1260 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).
The survival action permits recovery only for damages actually suffered by the deceased from the time of injury to the moment of death, including pain and suffering, loss of earnings, and any other damages sustained before death. Ly v. State, through Dep't of Public Safety and Corrections, 633 So.2d 197 (La.App. 1st Cir.11/24/93), writ denied, 93-3134 (La.2/25/94), 634 So.2d 835. Where there is no indication that a decedent consciously suffered, an award for pre-death pain and suffering should be denied. Pierre v. Lallie Kemp Charity Hosp., 515 So.2d 614, 619 (La.App. 1st Cir.), writ denied, 515 So.2d 1111 (La.1987).
*130 The question of whether the decedent actually suffered is a factual issue. See, e.g., Pierre, 515 So.2d 614; Chausse v. Southland Corp., 400 So.2d 1199 (La.App. lst Cir.), writs denied, 404 So.2d 278, 497, and 498 (La.1981). The appellate court's review of factual findings is governed by the manifest errorclearly wrong standard. The two-part test for the appellate review of a factual finding is: 1) whether there is a reasonable factual basis in the record for the finding of the trial court, and 2) whether the record further establishes that the finding is not manifestly erroneous. Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). Thus, if there is no reasonable factual basis in the record for the trial court's finding, no additional inquiry is necessary. However, if a reasonable factual basis exists, an appellate court may set aside a trial court's factual finding only if, after reviewing the record in its entirety, it determines the trial court's finding was clearly wrong. See Stobart v. State, through Dep't of Transp. and Dev., 617 So.2d 880, 882 (La.1993). Even though an appellate court may feel its own evaluations and inferences are more reasonable than the fact finder's, reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Stobart, 617 So.2d at 882. Where there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Stobart, 617 So.2d at 883.
Plaintiffs assert that it was error for the trial court to deny damages based on their survival action claim. The trial court concluded that the plaintiffs had failed to prove that the deceased suffered before death, stating in oral reasons:
On the survival action, the court recalls that testimony very well. And the court recalls the scene and the doctor speculating that the plaintiff, the decedent, would have been panic stricken, that kind of thing. The court noted and recalled that this gentleman had had several of these episodes where he had tried to stop the bleeding by placing a towel on there.
And the court feels that under the facts and circumstances it was not such that he would have been panic stricken. So I disregarded the expert's testimony in that regard. And I felt like there was insufficient proof and would require speculation to establish the survival action damages under the circumstances. Therefore, I didn't award [those damages]. I didn't feel like it had been proven by a preponderance of the evidence.
The evidence bearing on this issue includes the following facts. Mr. Samuel had been hospitalized for removal of hemodialysis grafts that had been placed in his arm. While in the hospital after the surgery, he had two bleeding episodes, both of which were stopped by the application of direct pressure to his arm. When Mr. Samuel was discharged from the hospital, he was instructed on how to put pressure on the area in the event of bleeding. He was not told that there was any danger in being left alone or that a bleeding episode could lead to his death.[3]
After being discharged, Mr. Samuel had at least one other bleeding episode before the occurrence resulting in his death. On the day he died, Mrs. Samuel left him home in bed while she took one of their daughters to school and picked up some medication. According to her testimony, *131 Mr. Samuel was alone in the house for no more than thirty minutes. The scene that Mrs. Samuel encountered when she came home showed that Mr. Samuel started bleeding while in bed, went to the bathroom for a towel to attempt to stop the bleeding, was unable to stop the bleeding, and eventually collapsed on the floor in a pool of blood. Mr. Samuel was already dead when his wife found him there upon her return home. Mrs. Samuel said it shocked her to realize "that he had bled to death just that quick."
Sheldon P. Kottle, M.D., the plaintiffs' expert in internal medicine and nephrology, testified that "you could guess [Mr. Samuel] had a heart attack or whatever[.]" Nevertheless, Dr. Kottle could not testify as to whether Mr. Samuel was in any pain prior to his death. Dr. Kottle, however, felt it was clear that Mr. Samuel knew there was a serious problem. This opinion was based on the report reviewed by Dr. Kottle, which indicated that Mr. Samuel was moving around and getting towels. Dr. Kottle opined that Mr. Samuel may have been "panic stricken" and in "mortal fear and anguish from dying[.]"
As the trial court noted, Dr. Kottle's opinion is speculative. It is up to the trier of fact to determine, from the facts, whether this was a reasonable inference. One reasonable inference, based on this evidence, would be that Mr. Samuel suffered mentally, emotionally, and possibly physically, in the moments before his death. Another reasonable inference from these facts is that Mr. Samuel simply took the steps that had been taken successfully on several previous occasions to stop the bleeding. He knew his wife was returning home soon, and may never have realized before he passed out that this bleeding episode was more serious or that he was in mortal danger.
When the trial court's factual finding on this issue is evaluated under the manifest error standard, the trial court's choice between two permissible views cannot be clearly wrong. Therefore, because the court's decision not to award survival damages was based on a factual finding that was not manifestly erroneous, this court must affirm that decision.

Life Expectancy
According to the plaintiffs, the trial court erred in concluding that Mr. Samuel had a life expectancy of five years instead of seven and one-half years. We disagree.
Dr. Kottle testified that "given [Mr. Samuel's] situation and all the records that I could find, that more likely than not, ... most physicians would feel that he would have survived five years.... [B]ut there is a decent chance, and it could be 50 percent, that he could have made it 10 years." Based on this conclusion, Dr. Kottle picked between five and ten years seven and one-half yearsas his moreprobable-than-not life expectancy. Thus, while it may have been reasonable for the trial court to fix Mr. Samuel's life expectancy at seven and one-half years, it was just as reasonable for the trial court to assign a life expectancy of five years, based on the evidence presented. Therefore, we find no error in the trial court's determination.

EXPERT WITNESS FEES
Plaintiffs assert that the trial court's expert witness fee awards of $3,500 for Dr. James Hudson and $1,300 for Dr. Kottle are unreasonably low. According to plaintiffs, the awards should be increased to $5,400 and $2,250, respectively.
Under Louisiana Revised Statutes 13:3666 and 13:4533, as well as Louisiana Code of Civil Procedure article 1920, the trial judge has great discretion in *132 awarding costs, including expert witness fees, deposition costs, exhibit costs, and related expenses. Bourgeois v. Heritage Manor of Houma, 96-0135 (La.App. 1st Cir.2/14/97), 691 So.2d 703, 706; see also Dupre' v. Maison Blanche, Inc., 97-0652 (La.App. 1st Cir.4/8/98), 712 So.2d 567, 572, writ denied, 98-1239 (La.6/19/98), 721 So.2d 471. Factors to be considered by the trial court in setting an expert witness fee include: the time spent testifying at trial, time spent in preparatory work for trial, time spent away from regular duties while waiting to testify, the extent and nature of work performed, and the knowledge, attainments, and skill of the expert. Additional considerations include the helpfulness of the expert's testimony to the trial court, the amount in controversy, the complexity of the problem addressed by the expert, and awards to experts in similar cases. Randolph v. General Motors Corp., 93-1983 (La.App. 1st Cir.11/10/94), 646 So.2d 1019, 1029, writ denied, 95-0194 (La.3/17/95), 651 So.2d 276. On appeal, the amount and fixing of expert fees will not be disturbed in the absence of an abuse of discretion. Barrilleaux v. Franklin Foundation Hosp., 96-0343 (La.App. 1st Cir.11/8/96), 683 So.2d 348, 361, writ denied, 96-2885 (La.1/24/97), 686 So.2d 864.
In its oral reasons for judgment, the trial court stated that Dr. Hudson's $2,000 in travel expenses were excessive. In addition, the court stated that it would not award costs or expenses for time spent with the plaintiffs' attorney preparing the case. While this court might have evaluated these factors differently, these were reasonable considerations for the trial court, and we find no abuse of discretion.

CONCLUSION
Based on the foregoing, the joint motion of the parties to dismiss defendants' appeal is granted and defendants' appeal is dismissed. The Fund and the Board are substituted as defendants in the plaintiffs' appeal. The judgment of the trial court is affirmed. All costs of this appeal are assessed to plaintiffs-appellants.
MOTION TO DISMISS DEFENDANTS' APPEAL GRANTED; PARTIES SUBSTITUTED; AFFIRMED.
NOTES
[1] Judge Richard J. Ganucheau of the Orleans Parish Civil District Court is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] A detailed statement of the facts of this case is contained in Samuel, 757 So.2d at 44-46.
[3] In the underlying liability suit, the court found the defendants were negligent in failing to give such instructions to Mr. Samuel.