| .PHILIP C. CIACCIO, J. Pro Tem.
These appeals arise from the trial court’s grant of a partial judgment notwithstanding the verdict raising plaintiffs general damages and from the denial of the remainder of plaintiffs motion for JNOV.
FACTS
On April 22, 1994, Angela Strain and Wallace Poole each traveled southbound on U.S. Hwy. 190 in St. Tammany Parish. When a construction zone caused traffic to move at a “stop and go” pace, Mr. Poole crashed his Suburban into the rear of Ms. Strain’s car. The impact pushed Ms. Strain’s vehicle into rear of the car ahead.
Ms. Strain filed suit against Mr. Poole and his insurer, Indiana Lumbermen’s Mutual Insurance Company for injuries allegedly sustained in this accident.[2] After a trial, a jury allocated 95 percent fault to defendant Poole and five percent comparative fault to plaintiff. Subject to the five percent reduction for comparative negligence, the jury awarded- plaintiff $15,685.49 in past medical expenses and $10,000 in general damages, but declined to award damages for future medical expenses, lost wages and loss of earning capacity.
Plaintiff subsequently moved for a judgment notwithstanding the verdict (JNOV). The trial court granted a partial JNOV, increasing plaintiffs general damage award to $50,000, but denied the remainder of her motion. The JNOV assessed jury costs to defendant “since he requested the jury and a jury was not necessary to hear the case.” Additional court costs and sheriffs and expert witness fees were deemed subject to a reduction for the jury's allocation of five percent comparative fault.
Plaintiff now appeals, alleging that the trial court erred: 1) in upholding the jury’s allocation of comparative fault to plaintiff; 2) in raising the general damage award only to the least reasonable amount; 3) in failing to award damages in an |3amount appropriate for the injuries sustained; 4) in failing to award future medical expenses; 5) in failing to award past lost wages; 6) in failing to award future lost wages and/or loss of earning capacity; and 7) in fading to award expert witness fees for vocational rehabilitation testimony.
Defendants also appeal the final judgment, alleging that the trial court erred in granting the JNOV on general damages and in assessing expert fees as costs for duplicative testimony that “was largely ignored by the jury.”
*147 LAW AND ARGUMENT
LSA-C.G.P. art. 1811 is the authority for a JNOV. In Davis v. Wal-Mart Stores, Inc., 00-0445 (La.11/28/00), 774 So.2d 84, 89, the Louisiana Supreme Court discussed the standard to be used in determining whether a JNOV has been properly granted:
A JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable jurors could not arrive at a contrary verdict. The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable men could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. If there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied. In making this determination, the court should not evaluate the credibility of the witnesses and all reasonable inferences or factual questions should be resolved in favor of the non-moving party.
Plaintiff argues on appeal that the trial court erred in denying a JNOV on six separate points. Defendant, on the other hand, contends that the trial court erred in granting the JNOV to raise plaintiffs general damage award. The standard of review when the trial court grants a JNOV is twofold. First, we must determine that the jury verdict was not supported by competent evidence and was wholly unreasonable. To make this determination, we must find that all of the evidence, when viewed in a light most favorable to the party benefiting from the JNOV, points so strongly and overwhelmingly in his favor that reasonable men could not arrive at a contrary verdict on the issue. Davis v. Wal-Mart Stores, Inc., 114, So.2d at 89. Second, only if we find that the trial judge properly granted |4the JNOV, the appellate court will review the JNOV using the manifest error standard. Id.

Defendant’s Assignment of Error Number 1

For the sake of simplicity, we will first address whether the trial court erred in granting the JNOV on general damages. On review of a JNOV award of higher quantum, the appellate court employs the same criteria as the trial court. If reasonable men, in the exercise of impartial judgment, could reach differing opinions on whether the award was abusively low, then the trial court erred in granting the JNOV and the jury’s damage award should be reinstated. Thibodeaux v. Wal-Mart Stores, Inc., 98-0556 (La.App. 1 Cir. 4/1/99), 729 So.2d 769, 771. On the other hand, if reasonable men could not disagree, then the trial court properly granted the JNOV and the appellate court will review the damage award based on the trial court’s independent assessment of damages under the abuse of discretion standard. Id., at 771.
Plaintiff and several members of her family testified about plaintiffs pain and suffering, as well as how the accident disrupted her life financially and emotionally. Plaintiffs son Ryan testified that he could see that his mother was in pain. Plaintiffs mother, Laura Henderson Durham, testified that plaintiff often held her back and complained that it hurt and that she had seen plaintiffs leg buckle beneath her. At trial, Ms. Durham described plaintiff as “mad at the world.” Ryan testified that his mother no longer played with him and that she cried whenever anyone spoke about the accident and her injuries. Ruth Ogron, plaintiffs grandmother, testified *148 that until the accident, Angela was “pretty-much taking care of her son and her house,” but she was no longer the same person.
Plaintiff testified that after the accident, she drove directly to the emergency room at St. Tammany Parish Hospital. Dr. Luis Matta testified that plaintiff complained of pain in her lower back and neck. His evaluation showed some tenderness in the lower back, but the x-rays were normal. He testified that |Bhe prescribed a muscle relaxer and an anti-inflammatory drug and told her to seek follow-up treatment if she continued to have problems.
Plaintiff alleged that she was still in pain two months later. She then saw Dr. Paul Doty, an orthopedist who had treated her for an ankle sprain in the past. Ají MRI ordered by Dr. Doty showed evidence of a posterior disc herniation. Dr. Doty prescribed steroid injections and physical therapy, but plaintiff contended that the physical therapy actually worsened the pain. Dr. Doty told her to discontinue therapy and to stop working if she continued to have problems. Dr. Doty testified that he did not consider plaintiff a surgical candidate and instead planned for conservative treatment. He felt she could have improved if she had followed that plan. Nevertheless, plaintiff testified that she decided that a neurologist would be better able to diagnose and treat her pain, so she stopped seeing Dr. Doty in July 1994.
Plaintiff began seeing Dr. Bert Bratton in August 1994 with complaints of low back pain and pain, weakness and numbness in her left leg. Dr. Bratton testified that his examination showed some tenderness in the lumbar area, a diminished range of motion and decreased sensation in the lower left leg and foot. He ordered more tests and diagnosed a lumbar strain with a possible disc protrusion. But Dr. Bratton also believed' that surgery was not necessary and saw no reason why plaintiff could not continue her sedentary work as a telephone operator. Plaintiff testified that Dr. Bratton released her because he only treated surgical patients, but Dr. Bratton was never questioned on the issue.
Plaintiff began seeing a different neurosurgeon, Dr. Kenneth Vogel, in July 1995. Dr. Vogel’s evaluation of plaintiffs lower back and left leg produced positive findings limited to the lower back. He found a severe limitation of motion and muscle spasms on both sides. , He testified that his first impression was either a herniated lumbar disc or lumbar instability. He testified that, in his opinion, plaintiff was at maximum improvement for conservative treatment and ordered a discogram so that he could determine whether plaintiffs condition 1 ficould be improved by either a neu-rotomy or a fusion. Plaintiff testified that she unfortunately was frightened by the procedure, which is very painful, and its risks so she declined. Dr. Vogel testified that without the discogram, he could not treat her further.
Plaintiff began seeing Dr. Louis Proven-za, the only remaining neurologist in St. Tammany Parish, in December 1996. Dr. Provenza testified that plaintiff reported constant lumbar and left leg pain. She told him that she could not sit for more than thirty minutes and was unable to work because of the pain. A myelogram showed a mild disc protrusion and compressed thecal sac that may have aggravated the nerves. Dr. Provenza testified that he recommended twelve weeks of therapy, but a note in his file indicated that plaintiff did not attend the sessions for various reasons related to transportation. He testified that if she was still in pain, he would now be willing to do the surgery.
In contrast, Drs. Robert Applebaum and Robert Steiner evaluated plaintiff for the *149 defense. Dr. Applebaum testified that he found only a moderate lumbar limitation and no spasm. He further testified that her test results were inconsistent and indicated that she exaggerated her symptoms. Dr. Applebaum’s examination showed nothing wrong with the nerve. And even though the earlier MRI showed a herniated disc, he concluded that her symptoms were not consistent with a herniation. He further testified that plaintiffs obesity ruled her out as a surgical candidate. In Dr. Applebaum’s opinion, plaintiff should continue conservative treatment and return to moderately sedentary employment.
Dr. Steiner testified that he found no acute distress or spasms. He believed that plaintiff could avoid surgery with physical therapy and that she was “certainly capable of working and performing sedentary type activities.” Dr. Steiner believed that plaintiff had some problems but said that he would only offer surgery if he had objective neurological findings and the patient had not responded to conservative treatment.
|7Plaintiff began seeing a psychotherapist, Timothy Crowley, in October 1994, claiming that she was struggling physically and emotionally with injuries and issues related to the accident. Mr. Crowley diagnosed an “adjustment order with depressed mood” related to her constant pain and the grief associated with no longer being able to work. Plaintiff also saw a psychiatrist during that time, Dr. Alan Coe, who testified that the accident triggered plaintiffs depression.
Several witnesses testified that plaintiff, already obese at the time of the accident, gained more than one hundred pounds since that time. Both Mr. Crowley and Dr. Coe attributed plaintiffs weight gain to depression. But Dr. M.L. Pittman, plaintiffs general practitioner, testified that in September 1994, he diagnosed her with hypothyroidism, a condition that can cause lethargy, depression and weight gain.
Dr. Pittman further testified that in November 1994, plaintiff suddenly asked him for antidepressants and a recommendation for psychotherapy. For the first time, plaintiff told him about the car accident, her treatment for injuries allegedly sustained and the pending litigation. According to Dr. Pittman, plaintiff should have told him about any other drugs that she had been prescribed in case they conflicted or caused a bad reaction with the thyroid medication. Furthermore, he had seen her several times since the accident; she never mentioned being in pain nor did she appear to be. He felt that she was “just following orders” and declined to treat her further.
The jury awarded the full amount of past medical expenses, but only $10,000 in general damages. In granting plaintiffs motion for a JNOV, the court held that “the damages suffered by the plaintiff are strikingly similar to the damages suffered by the plaintiff in Perrette v. City of Slidell, 465 So.2d 63” and that “$50,000.00 in general damages was the least amount that was reasonable under the circumstances.”
Considering the evidence presented by defendant, we find that it was of such quality and weight that reasonable and fair-minded men in the exercise of Isimpartial judgment might reach different conclusions. Certainly, the evidence does not clearly and undeniably show that plaintiffs injuries were “strikingly similar” to those suffered by the plaintiff in Per-rette. Although plaintiff presented medical testimony supporting her claims, defendant offered conflicting testimony by medical doctors who believed that she was exaggerating her injuries or suspected that she was planning her treatment as *150 part of a litigation strategy. Reasonable questions of fact should have been resolved in favor of defendants under the JNOV test. Accordingly, we reverse the JNOV and reinstate the judgment on the jury verdict awarding $10,000 in general damages and $15,685.49 for past medical expenses.

Defendants’ Assignment of Error Number 2

Defendants’ further contend that the trial court erred in assessing expert witness fees for unnecessary and redundant testimony. The trial court has vast discretion in setting expert witness fees. Samuel v. Baton Rouge General Medical Center, 99-1148 (La.App. 1 Cir. 10/2/00), 798 So.2d 126, 131-132. We find no abuse of discretion. This assignment of error has no merit.

Plaintiff’s Assignment of Error Number 1

Plaintiff contends that the trial court erred in denying a JNOV on the jury’s five percent comparative fault allocation to her. Plaintiff argues that she should have been found totally free from fault. In determining whether the motion for JNOV was properly denied on this issue, we must determine if the jury verdict was supported by competent evidence and was not wholly unreasonable. If we find that the facts and inferences point so strongly in favor of defendant (the non-moving party) that reasonable persons could not arrive at a contrary verdict, then the trial court was correct in denying the JNOV on the allocation of fault.
Defendants presented absolutely no evidence that plaintiff was in any way at fault in causing this accident. Mr. Poole testified that he crashed into the rear of plaintiffs vehicle in slow moving traffic. The investigating officer testified that, in his opinion, Mr. Poole was inattentive and distracted. No reasonable juror |3could have found plaintiff at fault in any way for causing this accident. Thus, the trial court improperly denied the JNOV on allocation of fault. We therefore grant the JNOV on this issue and reallocate that five percent fault to defendants.

Plaintiffs Assignment of Error Numbers 2 and 3

Plaintiff argues that the trial court erred in raising the amount of general damages only to the least reasonable amount and in failing to award damages appropriate to the injuries sustained. But because we have already reversed the trial court’s JNOV increasing the general damage award in any amount, these assignments of error are moot.
Plaintiffs Assignment of Error Numbers 3, J, 5 and 6
Plaintiff further complains that the trial court erred in denying a JNOV to award damages for future medical expenses and for past and future lost wages/ loss of earning capacity. Again we must determine whether the jury verdict was supported by competent evidence and was not wholly unreasonable. If we find that the facts and inferences point so strongly in favor of defendant (the non-moving party) that reasonable persons could not arrive at a contrary verdict, then the trial court was correct in denying the JNOV.
The jury did not award plaintiff any damages for future medical expenses or for past and future lost wages, nor did the trial court find that the jury’s decision on these points should be set aside:
The denial of future medical expenses will not be disturbed. Although there was some evidence that surgery might be necessary, there was also ample evidence upon which a jury could determine that future medical expenses are not warranted. Concerning the psychiatric treatment, there was evidence in *151 troduced that there may be other causes for the plaintiffs depression rather than the accident. Also, there was evidence that the plaintiff did not always follow the instructions given her by her doctor which may have caused her condition to last longer than it should have.
The plaintiff was not working at the time of the accident and had a sporadic work history prior thereto. In addition, there was testimony that she was able to perform sedentary work activities. Accordingly, the Court finds that there was justification for the jury to deny any claim for past or future wages.
hoThe record fully supports the trial court’s conclusion on these matters. We find that reasonable jurors could have concluded that plaintiff was not entitled to awards for future medical expenses and lost wages. Consequently, a JNOV was not warranted on these issues. These assignments of error are without merit.

Assignment of Error Number 7

In her final assignment of error, plaintiff contends that the trial court erred in failing to award expert witness fees for testimony by her vocational rehabilitation expert, Jeff Carlisle. The trial court reasoned that because the jury did not award damages for past or future lost wages, Mr. Carlisle’s testimony must have been disregarded.
On appeal, the amount and fixing of expert witness fees will not be disturbed absent an abuse of discretion. Samuel v. Baton Rouge General Medical Center, 798 So.2d at 131-132. In fact, when setting fees, the court may properly consider how helpful the expert’s testimony was to the court. Id., at 132. Thus, the trial court’s reasoning was appropriate and we find no abuse of discretion in the its failure to award costs for Mr. Carlisle’s testimony. This assignment of error has no merit.
CONCLUSION
For the reasons noted above, we reverse the trial court’s partial JNOV increasing plaintiffs general damage award to $50,000, but grant plaintiff a partial JNOV on allocation of fault and assess one hundred percent fault to defendants. Accordingly, except for that portion dealing with allocation of fault, we order the trial court to reinstate the jury verdict awarding plaintiff $10,000 in general damages and $15,685.49 in past medical expenses. We now remand this matter to the trial court and order that a judgment be signed in accordance with these holdings and the remainder of the jury’s verdict. All costs of this appeal are assessed to plaintiff.
REVERSED IN PART, RENDERED AND REMANDED.
KUHN, J., concurs and assigns reasons.

. The original petition lists Angela Strain as plaintiff both individually and on behalf of her minor child, Ryan Strain. Ryan’s claims were settled and dismissed by the parties before trial.