STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

* * * * * * *

2019 CA 0617

--CONSOLIDATED WITH--

2019 CA 0618

KIMBERLY CHIASSON, INDIVIDUALLY AND ON BEHALF OF HER MINOR
SON, CAMERON CHIASSON

VERSUS

LOUISIANA MEDICAL MUTUAL INSURANCE COMPANY AND JOHN
WHITTAKER, M.D.

JUDGMENT RENDERED: JUN 18 2020

* * * * * * *

Appealed from the
Nineteenth Judicial District Court
In and for the Parish of East Baton Rouge • State of Louisiana
Docket Number C612927 • Section 24

The Honorable R. Michael Caldwell, Judge Presiding

* * * * * * *

| | |
|---|---|
| Benjamin P. Mouton<br>Renee H. Pennington<br>Paul B. Lauve<br>Erick E. Helm<br>Baton Rouge, Louisiana | ATTORNEYS FOR APPELLANTS<br>PLAINTIFFS—Kimberly Chiasson,<br>individually and on behalf of her<br>minor son, Cameron Chiasson |
| Garrett S. Callaway<br>Tara S. Bourgeois<br>Herbert J. Mang, Jr.<br>Carey M. Nichols<br>Baton Rouge, Louisiana | ATTORNEYS FOR APPELLEES<br>DEFENDANTS—John Whittaker,<br>M.D., and Louisiana Medical<br>Mutual Insurance Company |

* * * * * * *

BEFORE: MCCLENDON, WELCH, AND HOLDRIDGE, JJ.

McClendon, J. Concurs with out reasons

**WELCH, J.**

In these consolidated appeals arising out of a medical malpractice suit, the plaintiffs, Kimberly Chiasson, individually and on behalf of her minor son, Cameron Chiasson, challenge two trial court judgments: a judgment rendered in accordance with a jury verdict in favor of the defendants, John Whittaker, M.D. and his professional liability insurer, Louisiana Medical Mutual Insurance Company ("LAMMICO"), which dismissed the plaintiffs' claims against the defendants; and a judgment taxing the plaintiffs with costs and expert witness fees. For reasons that follow, we affirm both judgments and issue this memorandum opinion in compliance with Uniform Rules—Courts of Appeal, Rule 2-16.1(B).

## BACKGROUND

On October 23, 2009, Rene Chiasson, a 38 year-old male, was admitted to Our Lady of the Lake Regional Medical Center ("OLOL") for abdominal wall reconstruction surgery to repair a hernia, which was performed by Dr. Whittaker, a general surgeon, with the assistance of Dr. Diane Kwan, a resident physician. Prior to the surgery, on October 18, 2009, Mr. Chiasson went to his internist/primary care physician, Dr. James David West, for pre-operative medical clearance. Due to Mr. Chiasson's extensive medical history, which included morbid obesity, deep vein thrombosis in the left leg, and a prior suspected pulmonary embolism, Dr. West made certain mechanical and pharmacological prophylactic recommendations for Mr. Chiasson's care. More specifically, Dr. West recommended Thrombo-Embolic Deterrent ("TED") hose, sequential compression devices ("SCD"), and the administration of an anticoagulant or blood thinner—Lovenox (.5 mg/kg subcutaneously every twelve hours). However, Dr. West's exact recommendation for the administration of the anticoagulant was not followed by Dr. Whittaker because he and the attending anesthesiologist made the decision to use an indwelling epidural catheter to control Mr. Chiasson's post-

2

operative pain and the use of anticoagulants was prohibited or limited while the epidural was in place in order to avoid the risk of an epidural hematoma. Instead, a limited amount of a different anticoagulant (5000 units of Heparin) was administered subcutaneously before the surgery and once a day after the surgery while the epidural was in place. Following the removal of the epidural, a standard prophylactic dose of Lovenox (30mg/kg every twelve hours) was administered to Mr. Chiasson while he was in the hospital.

Mr. Chiasson was discharged from the hospital on October 29, 2009 without any at-home anticoagulants. Mr. Chiasson was seen by Dr. Whittaker for post-operative visits on November 3, 2009 and on November 10, 2009. On November 11, 2009 (nineteen days after surgery and thirteen days after discharge from OLOL), Mr. Chiasson died from a pulmonary embolism presumably from deep vein thrombosis in his left leg.

Thereafter, the plaintiffs instituted these proceedings against Dr. Whittaker and LAMMICO.[1] Therein, the plaintiffs maintained that Dr. Whittaker's actions with regard to Mr. Chiasson constituted negligence and was below the applicable standard of care required of him. The plaintiffs further alleged that Dr. Whittaker's negligence caused or significantly contributed to Mr. Chiasson's death, and as such caused damages for which Dr. Chiasson and his insurer were liable. After a five-day jury trial on September 24-28, 2019, the jury returned a verdict in favor of the defendants, finding that Dr. Whitaker was not negligent in his treatment of Mr. Chiasson. A judgment in accordance with the jury verdict, which dismissed the plaintiffs' claims against the defendants, with prejudice, at plaintiffs' costs[2] was subsequently signed by the trial court on October 15, 2018. From this judgment,

---

[1] In their petition, the plaintiffs alleged that they had complied with the pre-lawsuit requirements of the Louisiana Medical Malpractice Act, which at the applicable time period herein was set forth in La. R.S. 40:1299.41, *et seq.* and that the medical review panel had issued its opinion.

[2] The judgment specifically provided that costs would be taxed against the plaintiffs by a rule to show cause in accordance with La. C.C.P. art. 1920.

3

the plaintiffs have appealed, challenging certain evidentiary rulings made by the trial court both before and during the jury trial. The plaintiffs maintain that these erroneous evidentiary rulings warrant reversal of the trial court's judgment and a remand for a new jury trial.

Following the trial court's judgment in accordance with the jury verdict, the defendants filed a motion to tax the plaintiffs with costs, seeking to have the plaintiffs taxed with all court costs of these proceedings as well as the expert witness fees incurred by the defendants for the experts that testified on their behalf at trial. By judgment signed on December 19, 2018, the trial court granted the motion and ordered the plaintiffs to pay the defendants' court costs in the amount of $1,707.68 and their expert witness fees in the total amount of $10,500.00. From this judgment, the plaintiffs have also appealed.[3] On appeal, the plaintiffs maintain that in the event the judgment in accordance with the jury verdict is reversed, the judgment on costs should likewise be reversed. The plaintiffs also argue that the judgment on costs should be reversed because the trial court abused its discretion in making the award of expert witness fees arbitrarily and without any supporting evidence, or alternatively, that the award of expert witness fees should be modified or reduced because it was not equitable and was excessive.

## JUDGMENT IN ACCORDANCE WITH JURY VERDICT

On appeal of the judgment in accordance with the jury verdict, the plaintiffs challenge several evidentiary rulings made by the trial court with regard to testimony offered on behalf of both the plaintiffs and the defendants. Specifically, the plaintiffs challenge: (1) the trial court's pre-trial ruling to limit the expert testimony of Dr. West, an internal medicine physician, on the standard of care and

---

[3] Pursuant to an order issued by this Court on October 11, 2019, the appeal of the October 15, 2018 judgment in accordance with the jury verdict (2018-CA-0617) and the appeal of the December 19, 2018 judgment on costs (2018-CA-0618) were consolidated. See **Kimberly Chiasson, individually and on behalf of her minor son, Cameron Chiasson v. Louisiana Medical Mutual Insurance Company, and John Whitaker, M.D.**, 2019-0617 (La. App. 1st Cir. 10/11/19) (*unpublished order on motion*).

4

causation because he was not a general surgeon;[4] and (2) the trial court's ruling during trial (a) not to limit the testimony of Dr. Lisa Perez, an anesthesiologist, on the standard of care and causation because she was not a general surgeon, no overlap in those specialties was established, and her testimony was cumulative and irrelevant, (b) to allow Dr. Karl Leblanc, a general surgeon and Dr. Whittaker's former partner, to provide factual testimony on matters that were cumulative and irrelevant, and (c) to not limit the testimony of Dr. London Guidry, a vascular surgeon who was in her residency at the time of the incident, on the standard of care and causation because she was not qualified to render an opinion and her testimony was irrelevant and misleading.

To establish a claim for medical malpractice, a plaintiff must prove the following by a preponderance of the evidence: (1) the standard of care applicable to the defendant; (2) the defendant breached that standard of care; and (3) there was a causal connection between the breach and the resulting injury. La. R.S. 9:2794(A); **Shultz v. Gouth**, 2010-0343 (La. 1/19/11), 57 So.3d 1002, 1006. In meeting this burden of proof, the plaintiff is generally required to produce expert medical testimony. **Fagan v. LeBlanc**, 2004-2743 (La. App. 1st Cir. 2/10/06), 928 So.2d 571, 575.[5] A proposed expert in a medical malpractice case must have knowledge of acceptable standards of medical care for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim and be qualified on the basis of training or experience to offer an expert opinion regarding those

---

[4] With regard to this pre-trial ruling (and other pre-trial rulings not at issue herein), the plaintiffs filed an application for supervisory writs. However, as to the trial court's decision to limit the expert testimony of Dr. West on the standard of care and causation, this Court declined to exercise its supervisory jurisdiction. See **Kimberly Chiasson, individually and on behalf of her minor son, Cameron Chiasson v. Louisiana Medical Mutual Insurance Company, and John Whitaker, M.D.**, 2018-1288 (La. App. 1st Cir. 9/21/18) (*unpublished writ action*).

[5] Although not applicable herein, the jurisprudence recognizes limited exceptions to the requirement of expert testimony in those instances where the claim arises out of an "obviously careless act" from which a lay person can infer negligence. **Pfiffner v. Correa**, 94-0924 (La. 10/17/94), 643 So.2d 1228, 1233.

accepted standards of care. La. R.S. 9:2794(D)(1)(b) and (c). A proposed expert's knowledge of the subject matter on which he is to offer expert testimony should be determined on a case by case basis. See **McLean v. Hunter**, 495 So.2d 1298, 1302 (La. 1986).

Generally the trial court is granted broad discretion in its evidentiary rulings and its determinations will not be disturbed on appeal absent a clear abuse of that discretion. **Turner v. Ostrowe**, 2001-1935 (La. App. 1st Cir. 9/27/02), 828 So.2d 1212, 1216, writ denied, 2002-2940 (La. 2/7/03), 836 So.2d 107. Furthermore, La. C.E. art. 103(A) provides, in pertinent part, that "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected." The proper inquiry for determining whether a party was prejudiced by a trial court's alleged erroneous ruling on the admission or exclusion of evidence is whether the alleged error, when compared to the entire record, had a substantial effect on the outcome of the case. If the effect on the outcome of the case is not substantial, reversal is not warranted. La. C.E. art. 103(A); **Emery v. Owens-Corporation**, 2000-2144 (La. App. 1st Cir. 11/9/01), 813 So.2d 441, 449, writ denied, 2002-0635 (La. 5/10/02), 815 So.2d 842.[6] The party alleging prejudice by an evidentiary ruling of the trial court bears the burden of so proving. **Emery**, 813 So.2d at 449.

In this case, regardless of whether any of the trial court's rulings excluding or admitting evidence were erroneous, based on our review of the entire record, we cannot say that the plaintiffs established that any of the alleged errors were prejudicial to them or otherwise had a substantial effect on or could have changed the jury's verdict. Thus, the reversal of the judgment in accordance with the jury's

---

[6] See also **Wingfield v. State ex rel. Dept. of Transp. and Development**, 2001-2668 (La. App. 1st Cir. 11/8/02), 835 So.2d 785, 799, writs denied, 2003-0313, 2003-0339, 2003-0349 (La. 5/30/03), 845 So.2d 1059-1060, cert. denied, 540 U.S. 950, 124 S.Ct. 419, 157 L.Ed.2d 282 (2003) (providing only if excluded evidence prejudices or taints a jury's verdict, *i.e.*, the excluded evidence could have permissibly changed the final verdict, can this Court step into the shoes of the factfinder and conduct a *de novo* review of all admissible evidence).

verdict is not warranted. As to Dr. West and the trial court's ruling to exclude his testimony as to the standard of care owed by Dr. Whittaker to Mr. Chiasson and causation, we note that the plaintiffs intended to rely, in part, on that testimony to meet their burden of proof. However, we note that as to the applicable standard of care and causation, the plaintiffs presented the testimony of Dr. Robert Rosen, whom the trial court accepted as an expert in the field of general surgery. Thus, any testimony by Dr. West as those issues would have overlapped or been cumulative of the testimony of Dr. Rosen; hence, we cannot say that the plaintiffs were prejudiced by the trial court's ruling or that the excluded testimony of Dr. West would have changed the jury's verdict.

With regard to Dr. Perez, we note that contrary to the plaintiffs' arguments on appeal, Dr. Perez did not provide any testimony as to the standard of care applicable to Dr. Whittaker or causation and she was never asked to give an opinion as to whether Dr. Whittaker was negligent. Rather, the defendants offered her testimony to refute the plaintiffs' and Dr. West's criticism of Dr. Whittaker for his decision not to give Mr. Chiasson the amount of anticoagulant recommended by Dr. West or to consider a different method of pain control that would have allowed for adequate deep vein thrombosis prophylaxis. Dr. Perez's testimony explained, from an anesthesia standpoint, the decision making process for the use of an indwelling epidural catheter, the reason why it was the best choice to manage Mr. Chiasson's post-operative pain given the magnitude of his surgery and medical history, and the limited amount of anticoagulants that an anesthesiologist would have allowed Dr. Whittaker to administer to Mr. Chiasson while the indwelling epidural catheter was in place. Accordingly, we cannot say that the testimony of Dr. Perez was cumulative or irrelevant.

Likewise, Dr. LeBlanc, who was not qualified as an expert during the trial, was never asked to provide opinion testimony regarding the standard of care

7

applicable to Dr. Whittaker, whether Dr. Whittaker breached the standard of care or was negligent, or on causation. Rather, his testimony, which was very brief, concerned the use of indwelling epidural catheters for post-operative pain control in 2009 following the type of surgery that Mr. Chiasson underwent and the restricted use of anticoagulants for this procedure at OLOL in 2009. While this testimony may have been somewhat cumulative of the testimony provided by Dr. Perez, we cannot say that the plaintiffs were prejudiced or substantially affected by the admission of this brief testimony or that the exclusion of this testimony would have changed the jury's verdict.

Lastly, as to Dr. Guidry, the plaintiffs initially complained about the trial court's ruling allowing her to qualify as an expert in vascular surgery since she was in her residency training at the time of the incident. However, we note that La. R.S.9:2794(D)(1)(a) is clear that a person qualifies to testify as an expert witness in a medical malpractice case if the person is "practicing medicine at the time such testimony is given or was practicing medicine at the time the claim arose." According to Dr. Guidry's testimony, at the time of trial, she had been practicing in the field of vascular surgery for approximately eight years. And, at the time the plaintiffs' claim arose in October/November 2009, she was a fully trained general surgeon and was participating in a vascular surgery fellowship and was familiar with the guidelines for deep vein thrombosis prophylaxis. Therefore, we cannot say the trial court abused its discretion in allowing her testimony. As to the substance of her testimony, we note that the defendants were offering her testimony in order to refute the testimony of Drs. West and Rosen. Dr. Rosen testified that Dr. Whittaker should have had Mr. Chiasson evaluated by a hematologist, vascular surgeon or pulmonologist for recommendations for deep vein thrombosis/pulmonary embolism prophylaxis during the operative period and after discharge since Mr. Chiasson was at a high risk for deep vein thrombosis and

an indwelling epidural catheter was being used for post-operative pain control. Dr. West testified that had he known that an indwelling epidural catheter was going to be used for post-operative pain control and/or that Mr. Chiasson was not going to get the amount of anticoagulants he recommended, he would have recommended that Dr. Whittaker consult a pulmonologist or vascular surgeon. Based on this evidence presented by the plaintiffs, Dr. Guidry provided expert opinion testimony within the field of vascular surgery regarding Mr. Chiasson's risk for deep vein thrombosis following Dr. Whittaker's surgery and offered opinion testimony to counter the plaintiffs' allegations of negligence regarding whether the dose of Lovenox recommended by Dr. West was the correct prophylactic dose for deep vein thrombosis, whether the anticoagulants and other methods of deep vein thrombosis prophylaxis administered to Mr. Chiasson were appropriate, and whether it was appropriate to use an epidural for post-operative pain control given Mr. Chiasson's history. As such, we cannot say that the testimony of Dr. Guidry was cumulative or irrelevant.

Therefore, based on our review of the record, we find no reversible evidentiary errors by the trial court. Accordingly, the October 15, 2018 judgment in accordance with the jury verdict, which dismissed, with prejudice, the plaintiffs' claims against the defendants at plaintiffs' costs, is affirmed.

## MOTION TO TAX COSTS

As previously set forth, with respect to costs, the trial court ordered the plaintiffs to pay the defendants' court costs in the amount of $1,707.68 and their expert witness fees in the total amount of $10,500.00. Specifically, the expert witness fees consisted of $1,500.00 for Dr. Perez, $4,000.00 for Dr. Guidry, and $5,000.00 for Dr. Guy Voeller.[7] On appeal, the plaintiffs argue that since the

---

[7] Dr. Guy Voeller was qualified as an expert in the field of general surgery and testified at trial on behalf of the defendants. No issues have been raised on appeal with respect to his testimony.

judgment in accordance with the jury verdict should be reversed, the judgment on costs should likewise be reversed. The plaintiffs also argue that the judgment on costs should be reversed because the trial court abused its discretion in making the award of expert witness fees arbitrarily and without any supporting evidence, or alternatively, that the award of expert witness fees should be modified or reduced because it was not equitable and was excessive.

Louisiana Code of Civil Procedure article 1920 provides that "[u]nless the judgment provides otherwise, costs shall be paid by the party cast, and may be taxed by a rule to show cause. Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable." Generally, the party cast in judgment should be taxed with costs; however, the trial court may assess costs in any equitable manner. See **Steadman v. Georgia–Pacific Corporation**, 95-1463 (La. App. 1ˢᵗ Cir. 4/6/96), 672 So.2d 420, 428, <u>writ denied</u>, 96-1494 (La. 9/20/96), 679 So.2d 440. The trial court has great discretion in awarding costs, including expert witness fees. **Samuel v. Baton Rouge General Medical Center**, 99-1148 (La. App. 1ˢᵗ Cir. 10/2/00), 798 So.2d 126, 131-132. Thus, on appeal, the amount and fixing of expert fees will not be disturbed in the absence of an abuse of that discretion. **Samuel**, 798 So.2d at 132.

Herein, costs were assessed by the trial court in accordance with the general rule that the party cast in judgment (or against whom judgment is rendered against) should be cast with costs. Because we found no error in the trial court's judgment in accordance with the jury verdict dismissing the plaintiffs' claims against the defendants, we cannot say that the trial court abused its discretion in determining that all costs should be assessed to the plaintiffs.

With respect to the amount of costs assessed for expert witness fees, La. R.S. 13:3666 sets out the general rule regarding compensation of expert witnesses and provides, in pertinent part, as follows:

A. Witnesses called to testify in court only to an opinion founded on special study or experience in any branch of science, or to make scientific or professional examinations, and to state the results thereof, shall receive additional compensation, to be fixed by the court, with reference to the value of time employed and the degree of learning or skill required.

B. The court shall determine the amount of the fees of said expert witnesses which are to be taxed as costs to be paid by the party cast in judgment either:

(1) From the testimony of the expert relative to his time rendered and the cost of his services adduced upon the trial of the cause, outside the presence of the jury, the court shall determine the amount thereof and include same.

(2) By rule to show cause brought by the party in whose favor a judgment is rendered against the party cast in judgment for the purpose of determining the amount of the expert fees to be paid by the party cast in judgment, which rule upon being made absolute by the trial court shall form a part of the final judgment in the cause.

In **Wampold v. Fisher,** 2001-0808 (La. App. 1st Cir. 6/26/02), 837 So.2d 638, 640, this court discussed the assessment of expert witness fees and explained what evidence a litigant must introduce to be successful on a motion to tax costs:[8]

The specific question presented is what evidence must a litigant introduce on a contradictory rule to fix and tax expert witness fees under [La.] R.S. 13:3666 B(2). *A trial court judge may fix an expert witness fee solely on the basis of what the court has observed or experienced concerning the expert's time and testimony in the courtroom* or in deposition under [La.] R.S. 13:3666 B(1). This article contemplates that "the testimony of the expert relative to his time rendered and the costs of his services" may be adduced outside

---

[8] See also **Wingfield v. State ex rel. Department of Transportation and Development,** 2003-1740 (La. App. 1st Cir. 5/14/04), 879 So.2d 766, 770, providing that:

*In setting expert fees and related costs for in-court time,* such as testimony and depositions submitted at trial, *the trial court may rely upon its own in-court observations and experiences, without further proof.* However, for work done or expenses incurred outside the courtroom, such as time spent gathering facts in preparation for trial testimony and time spent away from regular duties, *the plaintiff in rule must submit competent and admissible evidence.* Unless the parties stipulate to the specifics and costs of the out-of-court work, the expert must testify at the trial, or a subsequent hearing on the rule to tax costs, and be subject to cross-examination. Thus, ... the mere assertions of an attorney and the expert via the submitted bill, even in conjunction with an expert's affidavit attesting to the correctness and truth of the billing statement, are not sufficient. This is especially true for complex, protracted litigation that has produced high expert fees and related costs.

(Emphasis added; citations omitted).

11

the presence of the jury. The court then determines the amount of the fee. *If a rule under [La.] R.S. 13:3666 B(2) seeks to set the value on the time the expert witness was before the court, that value may be determined by the court on the basis of its observation of and experience with the expert witness at trial, without further proof.* However, if the rule seeks to value the total time employed by the expert, for example, time gathering facts necessary for his testimony, time spent away from regular duties while waiting to testify, or if the party seeks a fee outside of that normally charged by similar experts in that field, then the plaintiff in rule must prove by competent evidence, what service and expertise the expert rendered in addition to that observed by the trial court. Neither [La. R.S. 13:3666]B(1) nor B(2) allows the trial court to value the expert's services performed away from its hearing and observation without competent and admissible evidence.

(Emphasis added; citations omitted).

As set forth above, the trial court's award of expert witness fees was broken down as follows: $1,500.00 for Dr. Perez; $4,000.00 for Dr. Guidry and $5,000 for Dr. Voeller. While all three of these experts testified live at trial, none of the experts testified as to their fees or time in court—either during the trial or at the subsequent hearing on the motion to tax costs. In setting the award, the trial court noted that it was vested with vast discretion in setting the expert witness fees and that evidence on the matter was not necessary because the award would be "based on how long [the experts] were in court and what they had to do." Thus, the trial court made its award solely on the basis of what it personally observed or experienced concerning *the expert's time and testimony in the courtroom*, which it was entitled to do. Based on our review of the record, we cannot say that the trial court abused its discretion in setting the amount of expert witness fees. Accordingly, the December 19, 2018 judgment on costs is affirmed.

## CONCLUSION

For all of the above and foregoing reasons, the October 15, 2018 judgment in accordance with the jury verdict and the December 19, 2018 judgment on costs are affirmed. All costs of this appeal are assessed to the plaintiffs/appellants,

12

Kimberly Chiasson, individually and on behalf of her minor son, Cameron Chiasson.

**JUDGMENTS AFFIRMED.**